# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**EUGENE WILLIAMS,**
      **Plaintiff,**

    v.                                                        Case No. 18-C-0583

**JON E. LITSCHER, et al.,**
      **Defendants.**

---

## DECISION AND ORDER

Eugene Williams brings this action for damages under 42 U.S.C. § 1983 against employees of the Wisconsin Department of Corrections. He alleges that the defendants failed to promptly correct an error relating to his criminal sentence that resulted in the extension of his extended supervision past the statutory maximum. The plaintiff was in jail on a supervision hold when one of the defendants noticed the error, and he spent 36 days in jail before the error was corrected and he was released. The plaintiff alleges that the defendants acted with deliberate indifference in failing to correct the error in his sentence faster than they did, and that therefore they violated the Cruel and Unusual Punishments Clause of the Eighth Amendment. Before me now is the defendants' motion for summary judgment and the plaintiff's motion for leave to amend her complaint to add a new defendant, Rita Haroski.[1]

---

[1] The plaintiff's complaint mentions the Fourth Amendment and purports to state a claim for false imprisonment under state law. The defendants move for summary judgment dismissing plaintiff's entire case, which would include the Fourth Amendment and false-imprisonment claims. *See* ECF No. 26. However, in their brief, the defendants discuss only the plaintiff's claim under the Eighth Amendment. They ignore the Fourth Amendment and the claim for false imprisonment. In his response brief, the plaintiff does not mention any claim other than his Eighth Amendment claim or contend that even if the court grants summary judgment on the Eighth Amendment claim it should

# I. BACKGROUND

In 2004, the Milwaukee County Circuit Court entered a judgment convicting Williams of two counts of attempted armed robbery with threat of force and a third count of substantial battery with intent to cause bodily harm. On each of the attempted armed robbery counts, the court sentenced the plaintiff to five years' imprisonment and 10 years' extended supervision. On the battery count, the court sentenced the plaintiff to 18 months' imprisonment and 24 months' extended supervision. All sentences were to run concurrently.

On March 11, 2004, staff members in the records department of Dodge Correctional Institution (who are not defendants here) calculated the plaintiff's sentence. They determined that his "max discharge date" was April 19, 2018. Def. Prop. Finding of Fact ("PFOF") ¶ 11.[2] In 2008, Williams was released from prison and began serving the extended-supervision component of his sentence. In March 2014, defendant Susan Wundrow became Williams' probation agent.

On Sunday, May 7, 2017, Williams was arrested and taken into custody after a woman claimed he battered her. Williams also admitted to snorting cocaine and was found with drug paraphernalia. On the following Monday, Wundrow learned of the arrest. A day later, her supervisor placed a "supervision hold" on Williams, which had the effect of keeping him in jail pending a revocation decision. Def. PFOF ¶ 19. That

---

allow the other claims to proceed. Thus, I assume that the plaintiff has abandoned all claims other than his claim under the Eighth Amendment.

[2] The plaintiff did not file a response to the defendants' proposed findings of fact. Thus, under the local rules of this court, those proposed findings are deemed admitted. *See* Civ. L.R. 56(b).

same day, May 9, 2017, Wundrow sent an email to the general mailbox for the records department at Dodge Correctional Institution for the purpose of finding out how much time was left on Williams' sentence. She intended to use this information to guide her revocation decision.

Wundrow's email to the records department attached a form known as DOC-416. Agents regularly use this form when requesting sentence computations from the records department. The agent completes the top half of the form. The records department enters the sentence computation on the bottom half of the form and returns it to the agent. The typical timeline from when a DOC-416 form is emailed to the records department to when it is completed and returned to the agent is 1–2 weeks.

On May 9, 2017, defendant Amber Devries (formerly known as Amber Parenteau) received Wundrow's email and was assigned to perform the sentence computation. Prior to that date, Devries was not involved with Williams' case; she was not the records employee who calculated Williams' max-discharge date in 2004. When she received the email, she did not know that Williams was on a probation hold.

On May 12, 2017, Devries completed the sentence computation for Williams. In the course of doing so, she noticed that the court's judgment of conviction contained an error. In counts 1 and 2, Williams was convicted of attempted armed robbery. Under Wisconsin law, when a person is convicted of an attempted crime, the maximum term of extended supervision is one-half the maximum term for the completed crime. *See* Wis. Stat. 939.32(1m)(b). Williams' armed-robbery conviction was a Class C felony. The maximum term of extended supervision for a completed Class C felony is 15 years. *See* Wis. Stat. § 973.01(2)(d)2. Thus, the maximum term of extended supervision to which

3

the court could have sentenced Williams on each of counts 1 and 2 was 7.5 years. However, the court actually sentenced him to 10 years' extended supervision on each count, thus creating an excessive sentence.

When Devries finished her sentence computation, she sent it to the "Central Records Office" for "proofing," as she was required to do under the department's procedures. Def. PFOF ¶ 30. The proofing process usually takes a week to complete. Here, proofing was complete on May 17, 2017, and the proofer determined that Devries' computations were correct.

When the Department of Corrections notices a possible sentencing error, it notifies the sentencing court. Def. PFOF ¶ 31. On May 18, 2017, Devries sent a letter to the Milwaukee County Circuit Court notifying it that the records department believed the court had made a mistake in sentencing Williams to 10-year terms of extended supervision on the attempted armed robbery counts. ECF No. 10-1 at p. 1 of 24. After she sent this letter, Devries had no further involvement in Williams' case.

Meanwhile, on May 15, 2017, Wundrow and her supervisor decided that they would not revoke Williams' extended supervision based on his recent arrest. Instead, they planned to send him to a halfway house and see that he received mental-health treatment and treatment for alcohol abuse. However, because a bed at the halfway house was not immediately available, Williams continued to be confined at the jail.

On May 22, 2017, the Milwaukee County Circuit Court entered an order commuting Williams' terms of extended supervision to 7.5 years. The court agreed that the original terms of 10 years exceeded the amounts allowed under the Wisconsin

Statutes. On May 24, 2017, the court entered an amended judgment of conviction reflecting the reduced terms.

An amended judgment of conviction does not specify a new release date; it simply amends the sentence. When the Department of Corrections receives an amended judgment, it computes a new sentence and identifies a new release date. There is generally a delay of a couple of weeks between when the court enters the judgment and when the Department of Corrections routes it to an employee who performs the new sentence calculation. Def. PFOF ¶¶ 64–65. The delay occurs because the Department must retrieve the offender's file from its archives before the sentence can be calculated. *Id.*

In the present case, the amended judgment of conviction was eventually routed to Rita Haroski, who was responsible for recalculating Williams' sentence. Haroski does not know the date on which she received the judgment. At that time, however, she did not know that Williams was in jail on a supervision hold. Haroski completed her computation on June 6, 2017. The computation showed that Williams should have been released from extended supervision on October 19, 2015. Per departmental policy, Haroski sent her computation to a proofer. Proofing was complete on June 8, 2017, and records show that Haroski received documentation back from the proofing department that day. *See* Haroski Dep. at 22:4–22:8. However, she does not remember whether she saw the documentation that day, which was a Thursday. *Id.* at 22:9–22:12.

On Monday, June 12, 2017, Haroski informed Wundrow that Williams' extended supervision had expired in 2015. Wundrow immediately arranged to have Williams

released from custody, and he was released later that day. Wundrow also helped Williams find a place to spend the night after he was released from prison.

Williams was surprised by his abrupt release from prison, and for this reason he asked Wundrow to prepare documentation confirming that his extended supervision had ended. On June 22, 2017, Wundrow created such a document, which the parties refer to as an "informal discharge certificate." Def. PFOF ¶ 57. The Secretary of the Wisconsin Department of Corrections, Jon Litscher, signed a formal discharge certificate for Williams on June 15, 2017. However, the informal and formal discharge certificates were informational only—they did not have to be executed for Williams' sentence to end. The parties agree that Williams' sentence actually ended on June 12, 2017, the date on which he was released from jail.

Williams now sues Wundrow and Devries under 42 U.S.C. § 1983, alleging that they are liable for damages for the 36 days he spent in jail on the probation hold. Williams had previously also sued Jon Litscher, the former Secretary of the Department of Corrections, and the State of Wisconsin. However, after these defendants filed a motion to dismiss, the plaintiff withdrew his claims against them without prejudice to adding them back to the case if he discovered a viable claim against them during discovery. *See* ECF No. 21. The plaintiff has not sought to bring Litscher or the State of Wisconsin back into the case, and therefore I will not discuss them further.

After the plaintiff learned in discovery that Rita Haroski was the one who recalculated his release date based on the amended judgment, he moved for leave to file a second amended complaint that added her as a defendant. A short time later, the existing defendants filed their motion for summary judgment. Their motion assumes that

Haroski is a party to the case and argues that she, like the existing defendants, is entitled to summary judgment. They then argue that because Haroski is entitled to summary judgment, granting leave to file the second amended complaint would be futile.

In this order, I decide both the defendants' motion for summary judgment and the plaintiff's motion for leave to file a second amended complaint.

## II. DISCUSSION

**A.    Summary Judgment**

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

A defendant violates the Eighth Amendment if, because of his or her deliberate indifference, a plaintiff is held in custody after the time specified in his sentence has expired. *See Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016); *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015); *Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006). In the present case, there is no dispute that the plaintiff was held in custody after the time specified in his sentence had expired. The issue is whether Wundrow, Devries, and/or Haroski were deliberately indifferent to the risk that the plaintiff was being held beyond his release date. Deliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally

reckless, that is, ignored a known risk. *Figgs*, 829 F.3d at 903. A state officer is deliberately indifferent when he does nothing, or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred. *Id.*

Before proceeding, I note that, until the Milwaukee County Circuit Court entered its amended judgment of conviction on May 24, 2017, Williams was not being held in custody after the time specified in his sentence had expired. Rather, until that date, Williams was subject to a state-court judgment providing that he was to serve a 10-year period of extended supervision. We now know that the court had made an error of law in sentencing Williams to 10 years of extended supervision rather than the maximum 7.5 years. But this error did not render the judgment void or invalid. Moreover, Williams or his criminal defense attorney could have noticed the error at the time the judgment was entered (or at any later time) and brought it to the court's attention. If the court refused to correct the error, he could have appealed. Thus, until May 24, 2017, Williams was lawfully in custody, and no defendant could be liable for causing him to be imprisoned beyond his maximum release date. In any event, as explained below, a jury could not reasonably find that Wundrow, Devries, or Haroski acted with deliberate indifference at any time.

I start with Wundrow, Williams' probation agent. Prior to his release, Williams did not suspect that his sentence had been miscalculated. Thus, he never asked Wundrow to investigate the matter. Moreover, Wundrow had no reason to think that she might have been exercising custody over Williams beyond his release date. Wundrow was not responsible for calculating Williams' release date. Until Williams was arrested and she needed to make a revocation decision, Wundrow had no reason to even inquire about

his release date. And when she inquired, she made an appropriate request to the records department, which is the department responsible for computing sentences. *Cf. Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (bureaucracies may divide tasks among officials). As soon as she received the response from the records department telling her that Williams' extended supervision had expired, she swiftly arranged for his release. Thus, a reasonable jury could not find that when Wundrow was alerted to the risk that Williams was being held past his release date, she either did nothing or took action that was so ineffectual under the circumstances that deliberate indifference could be inferred. *See Figgs*, 829 F.3d at 903. To the contrary, it is difficult to imagine what more she could have done under the circumstances. Accordingly, Wundrow is entitled to summary judgment.

Turning to Devries, the plaintiff contends that a jury could find that she acted with deliberate indifference because, he claims, after she discovered the error in the court's judgment, she "did nothing" for six days. Pl. Br. at 3, ECF No. 31. However, this is not a reasonable characterization of her conduct. Devries received Wundrow's request for a sentence calculation on May 12, 2017 and completed it that same day. Under departmental policy, she was required to send her computation to the Central Records Office for proofing before she could take further action. Proofing was completed on May 17, 2018. The very next day, Devries sent a letter to the court advising it of the potential error in its sentence. Devries could not have taken any additional action until the court amended its judgment. Thus, no reasonable jury could find that when Devries learned of the problem with the judgment, she either did nothing or took action that was so ineffectual under the circumstances that deliberate indifference could be inferred. *See*

*Figgs*, 829 F.3d at 903. To the contrary, she did exactly what she was supposed to do under the department's procedures. Accordingly, Devries is entitled to summary judgment.

As for Haroski, the plaintiff contends that "there is no explanation as to why it took several weeks for [her] to act after" the amended judgment was entered. Br. in Opp. at 3, ECF No. 31. But this is false, as the record contains exactly such an explanation, and this explanation is undisputed. Specifically, in failing to respond to the defendants' proposed findings of fact, the plaintiff has admitted that "when an amended judgment of conviction is entered by a court, it does not immediately reach a corrections sentencing associate at Dodge Correctional; the amended judgment goes through several people, including the Offender Records Associate, before being presented to the office responsible for calculating a new release date, which cannot be done until the offender's file is pulled from the archives." Def. PFOF ¶ 64. The plaintiff has further admitted that this process can take "a couple of weeks." *Id.* ¶ 65. In the present case, Haroski completed Williams' new sentence calculation on June 6, 2017, which was less than two weeks after the court entered the amended judgment. Because it is undisputed that it normally takes about two weeks for an amended judgment to be routed to a sentence calculator, it appears that Haroski calculated the new sentence very soon after she received the amended judgment.

Once Haroski calculated the new sentence, she was required to send it out for proofing. Thus, she could not have immediately informed Wundrow of her conclusion that Williams' extended supervision had expired in October 2015. The proofing department sent its results back to Haroski on June 8, 2017, a Thursday. Haroski

10

notified Wundrow of the results on the following Monday. The plaintiff does not argue that a reasonable jury could find that this two-business-day delay between when the proofing department sent its results to Haroski and when she passed the results on to Wundrow was unjustified. Thus, Haroski is entitled to summary judgment.

**B.      Motion for Leave to Amend**

The remaining issue is whether to grant the plaintiff leave to file the second amended complaint, which adds Haroski as a defendant. As discussed above, even if Haroski were added as a party, she would be entitled to summary judgment. The Seventh Circuit has held that a district court may deny leave to amend a complaint to add a party who would be entitled to summary judgment on the ground that the amendment is futile. *See, e.g., King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007) ("An amendment is futile if the amended complaint would not survive a motion for summary judgment."). Accordingly, I will deny the plaintiff's motion to amend.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 26) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file the second amended complaint (ECF No. 24) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 13th day of January, 2020.

                                                        s/Lynn Adelman_____
                                                        LYNN ADELMAN
                                                        United States District Judge